*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 13-CM-325

CINQUAN CARTLEDGE, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-21140-12)

(Hon. Judith E. Retchin, Trial Judge)

(Submitted April 24, 2014                    Decided September 25, 2014)

*Megan D. Allburn* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Kristina L. Ament*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and BECKWITH, *Associate Judges*, and NEBEKER, *Senior Judge*.

GLICKMAN, *Associate Judge*: Appellant Cinquan Cartledge was found guilty after a bench trial of one count of unlawful entry. On appeal, he attacks the legitimacy of the "Bar Notice" issued to him on September 23, 2012, which he was alleged to have violated on December 4, 2012. He contends that the Bar Notice

was invalid because it rested solely on the police officers' mere suspicion of his involvement in criminal activity, as opposed to a higher standard of proof. In the alternative, appellant argues that his actions on September 23 warranted no more than a sixty-day bar that would have terminated prior to his arrest for unlawful entry on December 4. Because appellant failed to advance either of these possible defenses at trial, we review for plain error and affirm.

## I.

According to the government's credited evidence at trial, on September 23, 2012, two officers of the Metropolitan Police Department responded to a call reporting a man with a gun in the apartment complex known as Vista Ridge/Forest Ridge Residential Properties ("Vista Ridge"), a District of Columbia Housing Authority ("DCHA") property. The report described the gun-toting suspect as "a man wearing a stripey shirt, dark-complected with dreads, and blue jeans." While canvassing the complex, the police found a handgun in a vacant apartment close to where the suspect was reported to have been seen. The officers then saw appellant inside the complex and concluded that he matched the description of the suspect. They stopped appellant and discovered that he was unarmed. Appellant told the officers that he did not live at Vista Ridge.

The officers did not arrest appellant, but they issued him a Bar Notice that prohibited him from entering Vista Ridge for twelve months. The Bar Notice informed appellant that it was issued on account of his involvement "in illegal activities on Vista Ridge." The Bar Notice was read to appellant and he signed it.

On December 4, 2012, one of the officers who issued appellant's Bar Notice was dispatched to Vista Ridge in response to complaints about a dice game. Upon arriving at the complex, the officer saw several people, one of whom he recognized as appellant. Realizing that appellant was barred from Vista Ridge, the officer arrested him for unlawful entry.

At trial, the government called the two officers as witnesses. After the government closed its case, the defense moved for a judgment of acquittal on specific grounds. Appellant argued (1) that the evidence was insufficient to show he was actually inside the Vista Ridge complex on December 4, and (2) that the police lacked the authority to issue a Bar Notice on behalf of DCHA. The court rejected these arguments and denied appellant's motion. Appellant then testified in his defense that he was a resident of Vista Ridge (living with his mother in her apartment) and therefore immune from the District's Barring Policy. He further testified that the September 23 encounter described by the police did not in fact

occur, and that he never signed a Bar Notice on that date. In finding appellant guilty, the trial court accepted that he might have been visiting his mother at Vista Ridge, but the court did not believe his testimony that he resided there or that he had not been issued the Bar Notice, and it credited the police witnesses' account. At no time before or during trial did appellant raise a defense based on the invalidity of the underlying Bar Notice (other than his claim, which he does not pursue on appeal, that the police were not authorized to issue it).

## II.

"Traditionally, the American law punishes persons who enter onto the property of another after having been warned by the owner to keep off. In the District of Columbia, this policy is expressed in D.C. Code § 22-3[3]02 [(2012 Repl.)], which proscribes unlawful entry."[1] In order to establish the elements of unlawful entry under § 22-3302, the government must demonstrate "(1) entry that is (2) unauthorized – because it is without lawful authority and against the will of the owner or lawful occupant."[2] A defendant acts "without lawful authority" when

---

[1]  *Bean v. United States*, 709 A.2d 85, 86 (D.C. 1998) (citations, internal quotation marks, and footnote omitted).

[2]  *Ortberg v. United States*, 81 A.3d 303, 307 (D.C. 2013) (footnote omitted).

he or she is not "authorized by law to enter certain properties;" the exception is available, for example, to "emergency responders [or] members of the law enforcement community entering pursuant to a warrant."[3]

Section 22-3302 treats public housing as private property for purposes of unlawful entry.[4] The District's "Barring Policy," as set forth in 14 DCMR § 9600 *et seq*. (2005), implements the offense for public housing properties owned by the DCHA. The Barring Policy sets out the basis for issuing "Temporary" (60-day) and "Extended" (up to five-year) Bar Notices to persons (such as appellant) who may have been invitees but who have engaged in prohibited conduct on public housing premises.[5] Specifically, it provides that guests who "[engage] in conduct that is dangerous to the health or safety of residents or DCHA employees" or who "[engage] in activities involving illegal drugs, violence, weapons, theft, assault, [or] serious damage to property" are subject to five-year Extended Bar Notices.[6]

---

[3] *Id*. at 307 n.5. Appellant does not claim that he came within the "authorized by law" exception.

[4] Section 22-3302 (a)(2) ("For purposes of this subsection, the term 'private dwelling' includes . . . public housing.").

[5] *See* 14 DCMR § 9600.5 (b), (c); *see also* 14 DCMR §§ 9600.2-4 (establishing the parameters of Bar Notices for persons unauthorized to be on the property).

[6] *See* 14 DCMR § 9600.5 (c)(2)-(3).

Metropolitan Police Department officers are authorized to issue Bar Notices and thereby effectuate the will of the District to exclude a particular individual from its property.[7] Bar Notice violators are subject to prosecution for unlawful entry under the regulation.[8]

In this appeal, appellant does not pursue the arguments he made in the trial court. His primary contention, which he did not present below, is that the one-year Bar Notice issued to him on September 23, 2012, was invalid because the police did not have sufficient evidence to believe he had been carrying a gun at Vista Ridge, and that the police were not authorized to bar him from the premises on mere suspicion. But though appellant styles this argument as one attacking the sufficiency of the evidence, what he articulates is, in fact, a potential *defense* to the charge of unlawful entry.

---

[7] *See* 14 DCMR § 9600.8.

[8] *See* 14 DCMR §9600.10 (b); *Haye v. United States*, 67 A.3d 1025, 1031 (D.C. 2013) (affirming conviction for unlawful entry where "[t]he evidence established that Haye entered [public housing] after having been barred and without lawful authority").

The government's evidence was clearly legally sufficient when viewed under the appropriate standard of review.[9] The police officers' testimony provided a sufficient basis to establish appellant's unlawful entry of Vista Ridge on December 4, 2012, for as this court has held, "a prima facie case of entry against the will of the lawful owner is made by showing that an individual entered a [property], not his own, which was obviously closed to [the individual]."[10] At most, a claim that the lawful owner (or its representative) lacked a sufficient basis in law to issue the Barring Notice might be a potential defense to the charge.[11] Because appellant failed to put such a defense before the trial court, his claim, if not waived altogether, is subject to the strictures of review only for plain error.[12]

---

[9] *See, e.g.*, *Gibson v. United States*, 792 A.2d 1059, 1065 (D.C. 2002).

[10] *United States v. (Roy) Thomas*, 444 F.2d 919, 926 (D.C. Cir. 1971) (citations omitted).

[11] *See, e.g., Whittlesey v. United States*, 221 A.2d 86, 92 (D.C. 1966) ("If a trespass is committed under a bona fide belief of a right to enter, such may be shown in defense."); *see also Shewarega v. Yegzaw*, 947 A.2d 47, 51-52 (D.C. 2008) (attack on the validity of the underlying Civil Protective Order in a contempt proceeding may be a defense to the charge in the narrow circumstance where the issuing court's action was a violation of due process).

[12] *See Ventura v. United States*, 927 A.2d 1090, 1099 n.8 (D.C. 2007) ("The plain error standard generally applies to contentions not raised before the trial court."); *but see (Robert) Thomas v. United States*, 985 A.2d 409, 413 (D.C. 2009) (appellant waived defense completely where he failed to raise it before the trial court).

We find no error that is "obvious or readily apparent."[13] We cannot do so where this court has "not spoken on the subject;"[14] as the government argues, no case in this jurisdiction has held that a Bar Notice is invalid if it is based merely on suspicion of criminal activity as opposed to stronger evidence. And in this case, the suspicion of appellant's involvement in such activity "dangerous to the health or safety of the residents" of DCHA housing at Vista Ridge[15] was both articulable and reasonable, given that the police had received a report of a described individual carrying a gun at Vista Ridge, had found a gun secreted in a vacant apartment, and then had determined that appellant was on the premises and matched the suspect's description. Thus, we cannot say the trial court plainly erred in not *sua sponte* recognizing that appellant's one-year Extended Bar Notice, issued under the authority of the District's Barring Policy which sanctioned a Bar Notice for up to five years, was invalid.[16] Therefore, appellant's arguments

---

[13] *Coates v. United States*, 705 A.2d 1100, 1104 (D.C. 1998).

[14] *Id.*

[15] *See* 14 DCMR § 9600.5 (c)(2)-(3).

[16] We add that the supposed inadequacy of the evidentiary justification for the Bar Notice may not amount to a "true" defense to a criminal prosecution for unlawful entry at all, because appellant may have been required to pursue other legal remedies to challenge the Bar Notice rather than "resort[ing] to self-help" by violating the bar and attacking its legitimacy in his criminal case. *See* (*Robert*)
*(continued…)*

regarding the allegedly unlawful basis and duration of his Bar Notice cannot afford him relief on appeal.

For the foregoing reasons, appellant's conviction is hereby affirmed.

---

*(continued…)*
*Thomas*, 985 A.2d at 413 n.2 (citing *Lewis v. United States*, 445 U.S. 55, 65 (1980)); *see also Baker v. United States*, 891 A.2d 208, 212 (D.C. 2006) ("Thus, even assuming for the sake of argument that the trial court's no-contact order was invalid, Baker's conviction for contempt must be upheld for his failure to comply with that order."); *In re Marshall*, 445 A.2d 5, 7 (D.C. 1982) (validity of court order not at issue in determining defendant's guilt for criminal contempt because he was obligated to comply with court order appointing him as counsel for indigent client or seek to have order vacated). Because appellant's claim does not survive plain error review, we need not reach that question here.